**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE GOLDEN 1 CREDIT UNION,<br><br>           Plaintiff,<br><br>      vs.<br><br>H & B GROUP, INC., dba NISSAN OF BAKERSFIELD; et al.,<br><br>           Defendants.<br>_____/ | Case No. 1:06-cv-1717 OWW TAG<br><br>REPORT AND RECOMMENDATION TO GRANT MOTION TO REMAND (Doc. 20)<br><br>ORDERS DENYING WITHOUT PREJUDICE, MOTION TO CHANGE VENUE, AND MOTION TO AMEND COMPLAINT<br>(Docs. 13, 21) |

The Golden 1 Credit Union ("Plaintiff") is a state-chartered credit union and nonprofit mutual benefit corporation qualified to do business in California, with its principal place of business in Sacramento, California. (Doc. 1, Exhibit A, Complaint ("Complaint"), p. 1, lines 21-23). H & B Group, Inc., dba Nissan of Bakersfield ("Defendant Nissan"), is a California corporation doing business in Bakersfield, California. (Doc. 1, Complaint, p.1, lines 24-26). On October 12, 2006, Plaintiff filed a lawsuit against Defendant Nissan in the Superior Court of Sacramento County, asserting causes of action for breach of contract, fraud by concealment, fraud by intentional misrepresentation, and unfair competition in violation of California Business and Professions Code § 17200.

Each count in Plaintiff's state-court complaint relates to auto loans it financed for vehicles sold by Defendant Nissan. Plaintiff alleges that it is a third-party beneficiary of a written Dealer Agreement between Defendant Nissan and CU Direct Corporation ("CU Direct"). (Doc. 1, Complaint, p. 2, lines 7-13). Plaintiff contends that the terms of the Dealer Agreement provided that Defendant Nissan was required to pre-qualify its customers for consumer installment purchase

contracts using CU Direct's lending system software, and to ensure that the customers were members of, or related to a member of, Golden 1 Credit Union. The Dealer Agreement also provided that, once Defendant Nissan entered into an installment contract with a qualified customer, Plaintiff would purchase the installment contract and pay Defendant Nissan a 1% dealer fee in an amount ranging between $100 and $300. (Doc. 1, Complaint, p. 2, lines 21-28, p. 3, line 1). In its state-court complaint, Plaintiff alleges that Defendant Nissan represented that its customers were given advance copies of the installment contract to review prior to execution, that Defendant Nissan communicated correct and complete information relating to its customers' applications, and that the facts set forth in the installment contracts were true. (Doc. 1, Complaint, p. 2, lines 21-28, p. 3, line 1).

Plaintiff's complaint further alleges that, on or about November 2004, Defendant Nissan started falsifying hundreds of its customers' application forms to make it appear that the customers satisfied the requirement that applicants who were not members of Plaintiff's credit union were related to credit union members. Plaintiff alleges that Defendant Nissan instructed its customers to leave blank those portions of the applications and installment contracts regarding the method to qualify for membership, and later inserted the names and social security numbers of existing credit union members to make it appear as if its customers were family members of credit union members. (Doc. 1, Complaint, p. 3, lines 16-28, p. 4, lines 1-10).

On November 20, 2006, Defendant Nissan timely removed this action to federal court, pursuant to 28 U.S.C. § 1446(a) and (b). Defendant Nissan removed the state-court complaint based on federal jurisdiction under 28 U.S.C. § 1331.[1] See 28 U.S.C. § 1441(b). Specifically, Defendant Nissan contends that there is federal-question jurisdiction because Plaintiff is a federally insured, state-chartered credit union pursuant to 12 U.S.C. § 1752(6)(7), and is subject to regulations under 12 U.S.C. § 1751 et seq. (the "Federal Credit Union Act"),[2] and 15 U.S.C. § 57a.

---

[1] Title 28 U.S.C. § 1331 provides the following: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[2] The Court notes that Defendant Nissan refers to 12 U.S.C. § 1751 et seq. as the "Fair Credit Union Act." The correct title of Chapter 14 of Title 12 of the Unites States Code is the "Federal Credit Union Act." 12 U.S.C. § 1751.

Also on November 20, 2006, Defendant Nissan filed a "cross complaint" against Plaintiff Golden 1 and CU Direct.[3] (Doc. 3). Plaintiff answered the cross complaint on December 13, 2006, and CU Direct filed its responsive pleading on January 12, 2007. (Docs. 12, 18). Subsequently, Defendant Nissan moved to amend its "counter-complaint." (Doc. 21). On December 22, 206, Plaintiff filed a motion to change venue, contending that the action should have been removed to the district court in Sacramento, not Fresno, because the original complaint had been filed in the in the Sacramento County state court. (Doc. 13).

On February 2, 2007, Plaintiff filed a motion to remand. (Doc. 20). In its motion, Plaintiff contends that federal-question jurisdiction does not exist because all of its claims are based on California state law. On February 19, 2007, Defendant Nissan filed an opposition to the motion to remand, in which it argues that federal-question jurisdiction exists because "Plaintiff's claims are subject to federal statutes, rules and regulations governing their conduct and business practices under 12 U.S.C. § 1751 et seq., 12 C.F.R. 700 et seq., 15 U.S.C. § 57a(f) and even some criminal statutes under Title 18." (Doc. 30-1, p.3, lines 24-28; p.4, lines 1-14). Defendant Nissan avers that the federal laws cited above preempt any state laws. (Doc. 30-1, p.3, lines 9-12). In addition, Defendant Nissan further asserts that "violations of applicable federal laws may bar the relief" that Plaintiff seeks. (Doc. 30-1, p.4, lines 10-13). Finally, Defendant Nissan contends that a "[f]ederal question is implicit on the face of the complaint through Plaintiff's claims." (Doc. 30-1, p.4, lines 16-17). On March 5, 2007, a hearing on the motion to remand was held. (Doc. 33). On March 26, 2007, the parties agreed to continue the hearings on the motions to change venue and amend the "counter complaint" pending a decision on the motion to remand. (Doc. 36).

**Relevant Law**

Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . .." 28 U.S.C. § 1441(a). Federal courts, however, are courts of limited jurisdiction. Lowdermilk v. U.S. National Bank Ass'n, 479 F.3d 994,

---

[3] It is not clear whether Defendant Nissan's cross-complaint originally was filed in the state court. It appears, however, that a counter- or third-party complaint against CU Direct was filed before the action was removed. (Docs. 2, 3).

3

998 (9th Cir. 2007). Accordingly, a defendant who removes an action from a state court to a federal court has the burden to demonstrate that (i) the federal court has original jurisdiction over the case; and (ii) the removal was proper. Pullman Company v. Jenkins, 305 U.S. 534, 537, 59 S. Ct. 347, 349 (1939). The removal statute must be strictly construed, with all doubts and ambiguities resolved against removal and in favor of remand. Shamrock Oil & Gas Corporation v. Sheets, 313 U.S. 100, 108, 61 S. Ct. 868, 872 (1941). However, if any claim in the plaintiff's complaint comes within the federal court's original jurisdiction, removal is permitted. Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 13, 103 S. Ct. 2842, 2848 (1983).

**Federal Question Jurisdiction**

Defendant Nissan relies on federal-question jurisdiction as its ground for removal. 28 U.S.C. § 1331. Federal courts have original jurisdiction over claims "arising under" federal law. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, treaties or laws of the United States."). "The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the facts of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429 (1987) (internal quotations omitted). This "well-pleaded complaint rule" requires that a federal question appear on the face of plaintiff's state-court complaint, without reference to the answer or the petition or the notice of removal. Gully v. First National Bank, 299 U.S. 109, 113, 57 S. Ct. 96, 98 (1936). It does not matter that the plaintiff could have construed his or her claims to include federal law. Nor does it matter that the parties anticipate a federal defense to the plaintiff's claims. Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430. Plaintiffs are considered the "masters of their own cases" and, for the most part, can avoid federal jurisdiction by relying exclusively on state law in alleging their claims. Lowdermilk, 479 F.3d at 998-999. Consequently, if Plaintiff's complaint fails to allege claims that are founded on a federal claim or right, the action must be remanded to the Sacramento County Superior Court.

There are exceptions to the well-pleaded complaint rule. If the cause of action is created or governed by federal law, the action belongs in federal court. See 28 U.S.C. § 1331; Franchise Tax

Board, 463 U.S. at 27-28, 103 S.Ct. at 2855-2856 (1983); International Armor & Limousine Co. v. Moloney Coachbuilders, Inc., 272 F.3d 912, 915 (7th Cir. 2001).

In addition, there are circumstances in which Congress has federalized the particular subject area to which the cause of action belongs, i.e,, where it has so completely preempted a particular subject area "that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Insurance Company v. Taylor, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 1546 (1987). Thus, "where an area of law is 'completely preempted,' any state law complaint raising this select group of claims is necessarily federal in character." Id. "The complete federal preemption doctrine permits the federal court 'to look at the true nature of the plaintiff's complaint when the plaintiff has attempted to avoid a federal cause of action by relying solely on state law in the complaint.'" Donald v. The Golden 1 Credit Union, 839 F.Supp. 1394, 1397 (E.D. Cal. 1993) (quotation omitted).

The Ninth Circuit has identified, based on myriad U.S. Supreme Court holdings, three ways in which federal law may preempt state law. Bank of America v. City and County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002). The first method is based on an express statement by Congress that state law is preempted. The second type, or "field preemption," is inferred when the federal government has regulated a particular field pervasively and with such "volume and complexity" that is displaced. Id. (quotations omitted). Third, if a conflict between a federal and state law precludes compliance with the federal law, or if the state law interferes with "the accomplishment and execution of the full purposes and objective Congress," there exists an implied preemption of the state law. Id. (citation omitted).

Accordingly, to determine whether an action arises under federal law, the district court must consider whether: (1) federal law creates the cause of action; or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. Franchise Tax Board, 463 U.S. at 27-28, 103 S.Ct. at 2855-2856 (1983); International Armor, 272 F.3d at 915. If the court concludes that the cause of action and right to relief are based on state law, the court may have to determine whether complete preemptions necessitates that the action remain in the federal court. Metropolitan Life, 481 U.S. at 63-64, 107 S.Ct. at 1546.

**Analysis**

In the instant case, Plaintiff's state-court complaint alleges (1) breach of contract; (2) fraud - concealment; (3) fraud - intentional misrepresentation; and (4) unfair competition, all in violation of California common law or § 17200 of the California Business and Professions Code.  Plaintiff contends that these are all state-law claims and the action must be remanded to the state court. Defendant Nissan contends that these claims must be construed as federal claims because (i) Plaintiff is a federally insured financial institution whose conduct is governed by federal laws and regulations, and thus (ii) the trial court will have to evaluate the applicable federal laws and regulations in order to decide such claims. The Court will address each claim below.

    1. First Cause of Action – Breach of Contract

The first cause of action alleged in the complaint is for breach of contract. Plaintiff alleges that it is the third-party beneficiary of a written Dealer Agreement between Defendant Nissan and CU Direct, whereby Defendant Nissan agreed to use CU Direct's computer system and lending software ("CUDL") to facilitate the financing of auto loans through Plaintiffs lending services. (Doc. 1-2, Complaint, p. 2, lines 7-14).  A copy of the Dealer Agreement is attached as an exhibit to the complaint.

Paragraph 28 of the Dealer Agreement provides:

> 28. Third Party Beneficiary - Each and every Financial Institution participating in the CUDL program is a third party beneficiary of the Agreement . . . and may enforce the terms and provisions of this Agreement against Dealer and may pursue against Dealer any and all rights and remedies it may have at law or equity, without limitation or qualification, as if such Financial Institution were an original party to this Agreement.

(Doc. 1-2, Complaint, Exhibit, p. 7).

With respect to the parties' choice of law, paragraph 27 of the Dealer Agreement, entitled "Governing Law," states that "[t]his Agreement *shall be construed and interpreted in accordance with the laws of the State of California*."  (Doc. 1-2, Complaint, Exhibit, p.7; emphasis added).

In the first cause of action, Plaintiff alleges that Defendant Nissan breached the Dealer Agreement by communicating false information relating to prospective buyers or co-applicants, failing to furnish timely and complete copies of an installment contract form to prospective buyers or co-applicants, failing to submit accurate installment contract forms to Plaintiff, and failing to

6

repurchase RIC forms upon demand by Plaintiff Golden 1. (Doc. 1-2, Complaint, p. 4, lines 19-27). Plaintiff alleges that it was damaged as a result of Defendant Nissan's breach, and seeks damages as a consequence. (Doc. 1-2, Complaint, p. 4, line 28, p. 5, line 1, p. 7, lines 8-15).

Plaintiff's cause of action for breach of contract alleges all elements necessary to state a breach of contract claim under California law: (1) formation of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to plaintiff. See Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388, 272 Cal. Rptr. 387 (1990)(citing Reichert v. General Ins. Co., 68 Cal.2d 822, 830, 69 Cal. Rptr. 321 (1968); see also Binder v. Aetna Life Ins. Co., 75 Cal. App. 4th 832, 840, 89 Cal. Rptr. 2d 540 (1999). Moreover, the written agreement upon which this claim is based explicitly states that it is to be governed by California law. Because Plaintiff's first claim is a straightforward breach of contract claim based on California law, it not a cause of action created by Federal law.

2. Second Cause of Action - Fraudulent Concealment

The second cause of action alleged in the complaint is for fraud based on concealment of facts. Plaintiff alleges that Defendant Nissan intentionally concealed facts from Plaintiff in order to induce it to extend credit union memberships to prospective buyers. (Doc. 1, Complaint, p. 5, lines 5-10). Specifically, Plaintiff alleges that Defendant Nissan concealed "the fact that names and social security numbers of current members were placed on [a]pplication forms and [installment contracts]" in order to deceive Plaintiff into believing that the current members were related to prospective buyers. (Id.). Plaintiff alleges that it was unaware of the concealed facts, and that it relied on Defendant Nissan to provide true and correct information on the installment contracts. (Doc. 1, Complaint, p. 5, lines 11-15). Plaintiff also alleges that it had no reason to believe, and could not have reasonably discovered, that Defendant Nissan would falsify the installment contracts in order to qualify prospective buyers for credit union membership until after the fraud was perpetrated. (Doc. 1, Complaint, p. 5, lines 11-15). Plaintiff also alleges that Defendant Nissan's concealment was a substantial factor in causing harm to Plaintiff, and that, if it had been aware of the concealment, it would not have approved and qualified prospective buyers for credit union membership, would not have purchased the installment contracts, and would not have paid dealer fees. (Doc. 1, Complaint,

p. 5, lines 16-20). The complaint alleges that Plaintiff suffered damages as a result of the fraud, and seeks damages according to proof, including exemplary and punitive damages. (Doc. 1, Complaint, p. 5, lines 21-15).

Plaintiff's second cause of action for fraudulent concealment alleges all of the elements necessary to state a claim for tortuous fraud under California law: (1) misrepresentation of a material fact (by false representation, concealment, or non-disclosure); (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. Small v. Fritz Companies, Inc., 30 Cal 4th 167, 173-174, 132 Cal. Rptr. 2d 490 (2003) (internal quotations and citations omitted). Because Plaintiff's fraudulent concealment claim is based on California law, Federal law does not create Plaintiff's second claim.

3. Third Cause of Action - Fraud based on intentional misrepresentation

The third cause of action alleged in the complaint is for fraudulent misrepresentation. Plaintiff alleges that Defendant Nissan knowingly or recklessly and without regard for the truth made several false representations regarding purchasers' names and social security numbers, with the express intention that Plaintiff would rely on them in order to qualify such prospective purchasers for credit union membership. (Doc. 1-2, Complaint, p. 6, lines 3-12). Plaintiff alleges that Defendant Nissan's false representations were a substantial factor in causing harm to Plaintiff, and that, if it had been aware of Nissan's concealment of the facts regarding the installment contracts, it would not have approved prospective buyers for credit union membership, would not have purchased the installment contracts from Defendant Nissan, and would not have paid dealer fees. (Doc. 1-2, Complaint, p. 6, lines 13-17). The complaint alleges that Plaintiff suffered damages as a result of Defendant Nissan's fraud, and seeks damages according to proof, including exemplary and punitive damages. (Doc. 1-2, Complaint, p. 6, lines 18-22).

Plaintiff's third cause of action for fraudulent misrepresentation alleges all of the elements necessary to state a claim of fraud under California law: (1) misrepresentation of a material fact (by false representation, concealment, or non-disclosure); (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. Small v. Fritz Companies. Inc., 30 Cal 4th at 173-

///

174 (internal quotations and citations omitted). Plaintiff's claim for fraudulent misrepresentation is based on California law and, therefore, this claim's derivation is not Federal law.

### 4. Fourth Cause of Action - Unfair Competition

Plaintiff's fourth cause of action for unfair competition is based on California Business and Professions Code § 17200 ("Business Code §17200"), which states, in pertinent part, that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Plaintiff alleges that Defendant Nissan sold vehicles and received dealer fees through the aforementioned fraudulent and other unlawful actions, which constituted unfair competition.

Defendant Nissan attempts to invoke federal question jurisdiction in its notice of removal by claiming that, because Plaintiff is a federally insured financial institution,[4] the trial court will be obliged to consider federal laws and regulations that govern its behavior, and, thus, Plaintiff's right to relief depends upon federal law. The Court disagrees. Plaintiff's status as a federally insured financial institution does not transform its state law claims into federal causes of action. Plaintiff's claims, on the face of the well-pleaded complaint, are not governed by federal common law, and Defendant Nissan has cited no authority establishing that this area of the law has been federalized by Congress. See Metropolitan Life Insurance Company v. Taylor, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546 (1987).

With respect to all of Plaintiff's claims, the Court finds no basis for concluding that Plaintiff's right to relief depends on the resolution of a substantial question of federal law, nor has any authority for such a finding been brought to the Court's attention.

### 5. Preemption

The final step is to ascertain whether the federal statutes explicitly or impliedly preempt Plaintiff from proceeding with its state law claims. Metropolitan Life, 481 U.S. at 63-64, 107 S.Ct. at 1546.

---

[4] This Court notes that the only "evidence" that Plaintiff Golden 1 is federally insured is in an exhibit attached to Defendant Nissan's "cross claim" (Doc. 3). Exhibit B to the pleadings purports to be a printed copy of Plaintiff's website, which states that the credit union is federally insured by the National Credit Union Administration. (Doc. 3, Exhibit B, p. 3). For purposes of this report and recommendation, however, the Court will assume that Plaintiff is, in fact, federally insured.

Several state courts have found that specific federal statutes preempt California's Business Code § 17200. In Howard v. Blue Ridge Bank, the district court determined that the Fair Credit Reporting Act preempted most actions against furnishers of information to credit agencies under Business Code § 17200. Howard, 371 F.Supp.2d 1139, 1143-1144 (N.D. Cal. 2005). Section 17200 was also found to be preempted by federal laws as to claims involving interstate sales of wholesale electricity by the Federal Power Act, under which the Federal Energy Regulatory Commission was granted exclusive jurisdiction over interstate sales of wholesale electricity. In re Enron Corp., 328 B.R. 75, 77-83 & fn.1 (Bankr. S.D.N.Y. 2005). In addition, a district court concluded that § 17200 was preempted by the Home Owners' Loan Act. Silvas v. E*Trade Mortg. Corp., 421 F.Supp.2d 1315, 1317, 1319-21 (S.D. Cal 2006). However, section 17200 has not been held preempted by federal law as to state chartered credit unions, and Defendant Nissan has provided no authority to that effect.

Chapter 14, subchapter II of Title 12 of the United States Code contains the statutory provisions applicable to a federally insured state credit union. See 12 U.S.C. §§ 1781 through 1790(d), inclusive. This subchapter contains information regarding how a state credit union may become federally insured and various responsibilities that accompany the insured status. Id. Once insured, the statues require, inter alia, the state credit union to submit various reports to the National Credit Union Administration Board (the "Board"), conduct periodic audits, maintain a certain level of reserves, and comply with the Board's requests. The statutes also regulate the internal organization of the credit union, ensuring, for example, that ex-convicts are not hired. See generally id. Pursuant to 12 U.S.C. § 1789, the Board can:

> sue and be sued, complain and defend, in any court of law or equity, State of Federal. All suits of a civil nature at common law or in equity to which the Board shall be a party shall be deemed to rise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy.

12 U.S.C. § 1789(a)(2). No other provision explicitly mentions lawsuits or whether federally insured state credit unions may bring complaints against other corporations in state court alleging violations of state law.

///

Based on the foregoing, there is no express federal preemption barring Plaintiff from prosecuting his claims in state court.  Moreover, the statutory provisions applicable to Plaintiff as a federally insured state-chartered credit union are minimal and appear to be intended to protect Plaintiff's members from, and other federally insured credit unions, from financial irregularities and possible insolvency due to improper bookkeeping, embezzlement, etc.  Accordingly, the Court concludes that there is no "field preemption."  Finally, there is no indication that Plaintiff's state-law causes of action conflict with the federal statutes, given that the latter do not prohibit or otherwise mention the right of federally insured state credit unions from entering into contracts and seeking legal redress if necessary.

**RECOMMENDATION**

In light of the foregoing IT IS RECOMMENDED that Plaintiff's Motion to Remand (Doc. 20) be GRANTED.

This Report and Recommendation is submitted to the Honorable Oliver W. Wanger, the Senior United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fifteen (15) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendation." Replies to the objections shall be served and filed within ten (10) court days after service of the objections.  The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**ORDERS**

Based on the foregoing, the Court further concludes that Plaintiff's Motion to Change Venue (Doc. 13) and Defendant Nissan's Motion to Amend Complaint (Doc. 21) are moot in the event the Report and Recommendation is adopted by the District Judge and this action is remanded to the state court.  Accordingly, the Court will deny both motions, without prejudice to either moving parties' right to re-file such motions in the event the Report and Recommendation is not adopted by the

District Judge. Accordingly, the Court makes the following orders:

     1. Plaintiff's Motion to Change Venue (Doc. 13) is DENIED as moot, without prejudice; and

     2. Defendant Nissan's Motion to Amend Complaint (Doc. 21) is DENIED as moot, without prejudice.

IT IS SO ORDERED.

Dated: **April 27, 2007**                                        **/s/ Theresa A. Goldner**
                                                                 UNITED STATES MAGISTRATE JUDGE